**CONTINENTAL ASSURANCE COMPANY, Plaintiff,**

v.

**Linda Y. DAVIS and David Combes, Defendants.**

**No. 98 C 1153.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 15, 1998.

Carol Proctor, Hinshaw & Culbertson, Chicago, IL, for Continental Assur. Co.

Mark S. Simon, Jack Joseph, Law Office of Jack Joseph, Barry A. Feinberg, Daniel Francis Marren, David Jamison Foy, Chuhak & Tecson, Chicago, IL, for Linda Y. Davis.

Barry A. Feinberg, Daniel Francis Marren, David Jamison Foy, Chuhak & Tecson, Chicago, IL, David Combes.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff Continental Assurance Co. ("Continental") filed an interpleader action with this court pursuant to 28 U.S.C. § 1335 to determine the rights of defendants David Combes ("Combes") and Linda Davis ("Davis") to the proceeds of a Continental life insurance policy held by Brenda Combes ("Brenda") and to discharge Continental from any further obligations arising from Brenda's death. Continental deposited a check for its admitted, full and total liability

plus interest in the amount of $50,460.27 with the Clerk of this Court. This court approved the deposit and certified Continental's admitted liability.

After answering Continental's complaint, Combes filed a cross-claim against Davis pursuant to Rule 13(g), asking this court to: (1) declare that he is the rightful owner of the insurance proceeds; (2) enjoin Continental from paying out the proceeds to Davis; (3) impose a constructive trust on the proceeds in favor of himself; (4) direct Continental to pay him the proceeds; (5) assess damages, both actual and punitive, caused by Davis' actions and (6) grant such other relief as deemed fit, necessary, and proper. Having established original jurisdiction over Continental's interpleader action under 28 U.S.C. § 1335, this court has supplemental jurisdiction over Combes' 13(g) cross-claim pursuant to 28 U.S.C. § 1367. Combes' complaint involves the same case or controversy as Continental's interpleader action.

Now, Davis moves to dismiss Combes' cross-claim under Rule 12(b)(6) for failure to state a claim, and for judgment on the pleadings under Rule 12(c) for Continental's interpleader complaint. For the following reasons, Davis' motion to dismiss and the motion for judgment on the pleadings are denied.

### STANDARD OF REVIEW

A court may grant a motion to dismiss pursuant to Rule 12(b)(6) if it appears beyond a doubt from the pleadings that the plaintiff is unable to prove any set of facts that would entitle him to relief. *Moss v. HealthCare Compare Corp.*, 75 F.3d 276, 279 (7th Cir.1996); see also *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the plaintiff. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir.1996). The complaint need not specify the correct legal theory nor point to the right statute to survive a 12(b)(6) motion, provided that "relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992).

In addition, Rule 9(b) provides that: "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). The Seventh Circuit has defined the requisite particularity as including "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs.*, Inc., 20 F.3d 771, 777 (7th Cir.1994); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990) (Rule 9(b) particularity "means the who, what, when, where, and how; the first paragraph of any newspaper story").

A motion for judgment on the pleadings under Rule 12(c) is evaluated under the same standard as a 12(b)(6) motion. *Republic Steel Corp. v. Pennsylvania Engineering Corp.*, 785 F.2d 174, 182 (7th Cir.1986).

### FACTS

Combes' complaint alleges the following: David Combes married Brenda Davis Combes ("Brenda") on February 12, 1994. At the time, Brenda suffered from high blood pressure and mitral valve prolapse. Combes was aware of his wife's medical condition and "worried that his wife would not live long enough to help him raise" their two children. Soon after their marriage, Combes and Brenda reviewed their finances and made arrangements in the event either one of them would pass away unexpectedly. They agreed to change their life insurance beneficiary designations to name each other and to share the costs of the premiums. Each intended to insure that the surviving spouse would be able financially to take care of their children. In March of 1995, Combes and Brenda applied for life insurance policies with Continental and agreed to name each other as beneficiary to the proceeds. Each policy had a face value of $50,000. After securing her life insurance policy, Brenda told Combes that she had named him as sole beneficiary. Brenda continued to represent to Combes that he was the named beneficiary until her death.

However, in August 1996, unbeknownst to Combes, Brenda executed a change of beneficiary form, naming her sister, Davis, as the sole beneficiary of the Continental insurance policy. Davis was aware of Brenda's change in beneficiary designation at the time. In addition, Davis knew that Combes believed he was the beneficiary and was relying on the fact that he would be able to provide for the children if something should happen to his wife.

On December 27, 1997, Brenda died of heart failure due to dilated cardiomyopathy. Soon thereafter Combes submitted a claim to Continental for the proceeds of his wife's life insurance policy, believing himself to be the named beneficiary. Only after filing a claim for the proceeds from his late wife's policy did Combes come to learn that Brenda had changed her life insurance policy to name Davis as her beneficiary.

## DISCUSSION

■ Davis argues that as a matter of law, Combes is not an irrevocable beneficiary and therefore is not entitled to Brenda's life insurance proceeds. Davis' argument would be persuasive if Combes was asserting that he is an irrevocable beneficiary.[1] Combes, however, does not contest Davis' legal status as the named beneficiary for Brenda's policy. Instead, Combes asserts that for purely equitable reasons he is entitled to the proceeds and that a constructive trust should be imposed on the insurance benefits in his favor.

■ A constructive trust is an equitable remedy imposed to rectify unjust enrichment. *Kurtz v. Solomon*, 275 Ill.App.3d 643, 651, 212 Ill.Dec. 31, 656 N.E.2d 184 (1995). Generally, a constructive trust is imposed where: (1) actual or constructive fraud is considered as equitable grounds for raising the trust; and (2) where there is a fiduciary

duty and a subsequent breach of that duty. A constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing. *Suttles v. Vogel*, 126 Ill.2d 186, 127 Ill.Dec. 819, 533 N.E.2d 901 (1988). While most decisions ordering a constructive trust involve wrongdoing on the part of the party in possession, there is no requirement that the party in possession be responsible for the inequity rather than being merely the beneficiary of another party's wrongdoing. *Board of Trustees of Police Pension Fund v. Village of Glen Ellyn*, 337 Ill.App. 183, 85 N.E.2d 473 (1949) ("[W]here one person has received money . . ., which belongs to another, under such circumstances that in equity and good conscience he ought not retain it, recovery will be allowed. Further, the fact that the person to whom money was paid . . . was not guilty of deceit or unfairness, but acted in good faith, does not prevent recovery of the sum paid").

■ In Count I, Combes brings a claim for promissory estoppel, alleging that he reasonably relied on Brenda's representations that he was the beneficiary of her life insurance policy. In order to make a valid claim of promissory estoppel the plaintiff must show that: (1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts that would have prompted it to react otherwise. *See Coker v. Transworld Airlines Inc.*, 959 F.Supp. 946 (N.D.Ill.1997).

■ To satisfy the first element of the promissory estoppel claim, Combes need only allege that Brenda knowingly misrepresented

---

1. Davis also argues that Combes' cross-claim fails because an oral antenuptial agreement cannot be given effect as a matter of law. Davis cites case law and the Illinois Uniform Premarital Agreement Act, 750 ILCS 10/1 et seq., to support her position that oral pre-marital agreements are strongly disfavored. However, Davis' characterization of the agreement as antenuptial and her reasoning are flawed. The agreement between Brenda and Combes was not antenuptial. Combes clearly states that he and Brenda agreed to name each other as beneficiary after they were married. Therefore, not only is the case law cited by Davis inapposite, but the public policy concerns about antenuptial agreements that she describes do not apply to this case. Further, even if the Brenda and Combes' agreement was antenuptial, the status of that agreement as a matter of law is irrelevant to Combes' equitable claims. A promissory estoppel claim does not require proof of a writing regardless of whether the promise was antenuptial or postnuptial.

or concealed a material fact. Combes avers that Brenda "continued to reassure [him] during their marriage that he was the named beneficiary on her life insurance policies even after she had actually changed the policies to name her sister as beneficiary...." While Davis is technically the "opposing party" for purposes of Combes' cross-claim, Combes is seeking imposition of a constructive trust. Therefore, it is enough that Combes alleges Davis would be unjustly enriched as a result of Brenda's misrepresentation.

Combes has alleged facts sufficient to meet the other three elements of his promissory estoppel claim. Combes asserts that he reasonably relied on Brenda's misrepresentations that she had not changed the beneficiary for her policy. As a result of his reliance, Combes alleges that he suffered a detriment in that he neglected to purchase additional life insurance on his wife's life. Moreover, Combes avers that, after their marriage, he and Brenda shared the costs of the insurance premiums. Finally, Combes asserts that he had no knowledge that Brenda had changed the beneficiary designation, nor did he have reason to doubt her assurances. Accordingly, Count I states a claim for promissory estoppel and imposition of a constructive trust.

In Counts II and III, Combes alleges that he was the victim of actual and constructive fraud. To plead a claim of common-law fraud, a plaintiff must allege: (1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance. *TLMS Motor Corp. v. Toyota Motor Distributors, Inc.,* 912 F.Supp. 329 (N.D.Ill.1995) (quoting *Lagen v. Balcor Company,* 274 Ill.App.3d 11, 653 N.E.2d 968, 210 Ill.Dec. 773 (1995)).

■ Combes alleges in his complaint that Brenda induced him to make a reciprocal promise to designate her as his life insurance beneficiary, willfully changed the beneficiary designation on her policy to name Davis in violation of her promise, and continued to misrepresent the status of her benefi-

ciary designation to her husband after the change was made. Combes asserts that Brenda's actions were "deceitful and were taken in willful and wanton disregard and neglect of the rights and best interests" of Combes and his children. Moreover, Combes alleges that as a result of Brenda's actions he suffered great harm, both financially and emotionally. Therefore, Combes has alleged a set of facts sufficient to support a claim of actual fraud. While Rule 9(b) requires a heightened level of specificity when pleading fraud, Combes' has provided enough of the "who, what, when, where, and how" to satisfy that requirement. *DiLeo v. Ernst & Young,* 901 F.2d at 627.

■ Constructive fraud is defined as "a breach of legal or equitable duty which, irrespective of the moral guilt of the wrongdoer, the law declares fraudulent because of its tendency to deceive others." *Paskas v. Illini Federal Savings & Loan Assoc.,* 109 Ill. App.3d 24, 30, 440 N.E.2d 194, 198, 64 Ill. Dec. 642, 646 (1982). Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud. *Index Futures Group, Inc. v. Ross,* 199 Ill. App.3d 468, 476, 557 N.E.2d 344, 349, 145 Ill.Dec. 574, 579 (1990) (quoting *In re Estate of Neprozatis,* 62 Ill.App.3d 563, 19 Ill.Dec. 470, 378 N.E.2d 1345 (1978)). Thus, a constructive fraud claim is essentially a claim of actual fraud without the element of intent. Having determined that Combes alleges facts sufficient to state a claim for actual fraud, it follows that Combes has also stated a claim for constructive fraud. Therefore, Counts II and III state claims for actual and constructive fraud and imposition of a constructive trust.

■ In Count IV, Combes alleges that both Brenda and Davis committed tortious interference with his expectancy interest in the life insurance proceeds. Essentially, Combes asserts that Davis tortiously interfered with a contract between Combes and Brenda, or, alternatively, that Brenda tortiously interfered with her own contract with Combes and a constructive trust should be imposed. Under Illinois law a plaintiff alleging tortious interference with contract must

plead and prove: (1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach. *Prince . v. Zazove*, 959 F.2d 1395, 1397 (7th Cir.1992).

■ Even if Combes sufficiently alleged the existence of a valid and enforceable contract with Brenda, he has failed to allege enough facts to support any inference that Davis intentionally induced Brenda to breach such a contract. Davis' passive acceptance of the benefits of a breach of contract is not the equivalent of "intentional and unjustified inducement" of a breach. To the extent Combes claims Brenda interfered with her own contract with Combes, this is merely a claim for breach of contract by Brenda, and fails to state a claim against Davis. For these reasons, Combes' claim of tortious interference with an expectancy interest is dismissed.

Davis has also filed a Rule 12(c) motion for judgment on the pleadings based on her assertion that Combes failed to state a viable claim to the insurance proceeds. As discussed above, with respect to Counts I, II and III Davis is wrong. Consequently her motion for judgment on the pleadings is denied.

### *CONCLUSION*

For the foregoing reasons, Davis' motion to dismiss is denied as to Counts I, II and III and granted as to Count IV. Davis' motion for judgment on the pleadings is denied.